IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JAMES JOHNSON, | ) | Civil No.: 3:14-cv-00246-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

James S. Coon
Swanson Thomas Coon & Newton
820 SW 2nd Avenue, Suite 200
Portland, OR 97204

      Attorney for Plaintiff

Billy J. Williams, Acting U.S. Attorney
Janice Hebert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Heather L. Griffith, Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff James Johnson brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for a period of disability and Disability Insurance Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding this action to the Social Security Administration (the Agency) for an award of benefits. The Commissioner concedes that the ALJ committed errors that warrant a remand, but contends that the action should be remanded for further proceedings rather than for an award of benefits. She seeks an Order remanding the action to the Agency for such proceedings.

For the reasons set out below, the Commissioner's motion to remand for further proceedings should be granted.

## **Procedural Background**

Plaintiff filed an application for Disability Insurance Benefits (DIB) on July 8, 2010, alleging that he had been disabled since November 13, 2009.

After his application was denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). On September 6, 2012 a hearing was held before ALJ Richard Say. Plaintiff; Plaintiff's wife, Charlene Johnson; and Gary Jesky, a Vocational Expert (VE), testified at the hearing.

On September 14, 2012, the ALJ issued a decision finding Plaintiff disabled, but not before April 10, 2012. That decision became the final decision of the Commissioner on December 5, 2013 when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges the portion of the ALJ's decision finding him not disabled from November 13, 2009 through April 9, 2012.

FINDINGS AND RECOMMENDATION – 2

**Background**

Plaintiff was born in 1949 and was 63 years old at the time the ALJ issued his decision.

Plaintiff graduated from high school and completed one year of college. He served in the Army;

is a Vietnam veteran; and has past relevant work experience in telecommunications as a

customer service supervisor, direct sales supervisor, and customer service technical support

worker.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Agency's regulations, 20 C.F.R. Part 404,

Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's

impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

### **ALJ's Decision**

The ALJ first found that Plaintiff met the requirements for insured status through December 31, 2014 and had not engaged in substantial gainful activity since the alleged onset date.

At the second step of his analysis, the ALJ found that the Plaintiff had severe impairments "related to diabetes mellitus with peripheral neuropathies in upper and lower extremities, arthritis and degenerative disc disease."

At the third step, the ALJ found that since his alleged onset date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the per se disabling impairments set out in "the Listings." 20 C.F.R. Part 404, Subpart P, App. 1(20 C.F.R. 404.1520(d), 404.1525, 404.1526).

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that before April 10, 2012, the Plaintiff had the capacity to perform sedentary work as described in the Social Security Regulations, except that he should never climb ladders, ropes or scaffolds; and could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  The ALJ next found that, beginning on April 10, 2012, Plaintiff retained the capacity to perform sedentary work except that it would be necessary for him to elevate his legs to waist level periodically and he would be limited to only occasional handling, grasping and fingering.

At the fourth step of his disability analysis, the ALJ found that before April 10, 2012, Plaintiff was capable of performing his past relevant work as a customer service technical support worker. He next found that, beginning on April 10, 2012, Plaintiff could not perform any past relevant work. The ALJ determined that as of April 10, 2012, Plaintiff was an individual closely approaching retirement age, with at least a high school education and ability to communicate in English and with no work skills transferable to other occupations within the determined RFC.  Accordingly, the ALJ found that Plaintiff was not disabled prior to April 10, 2012, but became disabled on that date and continued to be disabled through the date of the decision.

FINDINGS AND RECOMMENDATION – 5

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

In his opening brief, Plaintiff asserts that the ALJ failed to provide the requisite support for rejecting the opinion of his treating physician, Dr. Doak; failed to provide sufficient support for the rejection of lay witness testimony and failed in neither specifically identifying which of Plaintiff's testimony he found less than credible nor providing adequate reasons for rejecting that

testimony. The Commissioner does not challenge these assertions and, as noted above, concedes there were significant errors made in the ALJ's decision that warrant a remand.

## I.  __Evaluating the Issue of Remand__

The Commissioner argues that because there are outstanding issues that must be addressed before it can be determined whether Plaintiff was disabled at any point after his alleged onset date and before April 12, 2012, remand for further proceedings is the appropriate remedy. Plaintiff asserts that remand for an award of benefits is appropriate. The parties agree that the sole question before the court is whether this case should be reversed and remanded for further proceedings or for an award of benefits.

## A. Standards

The Ninth Circuit has long held that the reviewing court has the discretion to remand a case either for further administrative proceedings or for a finding of disability and award of benefits. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).  In making this determination, a district court applies a three-part "credit-as-true" standard, also referred to as the *Harman* test. Garrison v. Colvin, 759 F.3d 995,1020 (9th Cir. 2014); Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). A district court may credit evidence that was improperly rejected by the ALJ and remand for an immediate award of benefits "if (1) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were [the treating physician's opinion] credited." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178).

When the first of these elements is met, "the district court may credit the rejected evidence as true as a matter of law (the "credit-as-true" doctrine) and analyze the next two

elements of the *Harman* test under that assumption." Trnavsky v. Colvin, No. 13-35755, 2016 WL 146007, at *1 (9th Cir. Jan. 6, 2016) (citing  Benecke, 379 F.3d at 594). If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when the *Harman* elements are satisfied. Garrison, 759 F3d. at 1021.

## B. Analysis

Here, the Commissioner declines to challenge any of Plaintiff's assignments of error and the parties agree that the first part of the *Harman* test is satisfied. Accordingly, this court need not address this issue further and may analyze the next two elements of the test under the assumption that the rejected evidence is true as a matter of law. Trnavsky, 2016 WL 146007 at *1.

The question then is whether after crediting Plaintiff's testimony, the lay witness testimony and Dr. Doak's opinion as true, there are outstanding issues that remain unresolved. In this instance, the ALJ has already determined that Plaintiff is, in fact, disabled but, in doing so, he selected an onset date later than that alleged by Plaintiff. Thus, the specific question here is not whether there are outstanding issues that must be resolved before a disability determination can be made but whether there are issues that must be resolved in order to determine *when* Plaintiff's impairments became disabling. Thus, our analysis is guided by Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1300 (9th Cir. 1999), in which the Ninth Circuit concluded that a claimant's testimony and her treating physician's opinion should have been credited and so doing would have required a finding of disability and remand for benefits but for the unresolved issue of that claimant's onset date. See also, Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir.2010)

(concluding that remand for an award of benefits under the credit-as-true rule was precluded by the "outstanding issue" of when the claimant's disability began).

Here, even crediting-as-true Plaintiff's statements and Dr. Doak's opinions, ambiguities within that evidence prevent this court from determining *when* Plaintiff became disabled. Under the Social Security Regulations, determination of onset date is a complex and fact-specific inquiry. Although Social Security Ruling ("SSR") 83–20 provides for a rebuttable presumption of disability on the alleged onset date, that date must "never be inconsistent with the medical evidence of record." Furthermore,

a claimant's alleged onset date or date of work stoppage "is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." SSR 83-20.

## 1. Plaintiff's Testimony

Plaintiff alleges his disability began on November 13, 2009.  However, in his application for benefits he stated that he stopped working because his job was outsourced to the Philippines. Plaintiff also reported that although he stopped working for other reasons, he believed his conditions became severe enough to prevent him from working on April 2, 2010. Tr. 163.  In an August 2010 Function Report, Plaintiff stated that his swollen feet and legs prevented him from walking "any distance" and that he could not sit or stand "for very long." Tr. 180. He reported that both of his knees ached due to arthritis; that he experienced numbness in his legs, arms, and hands and that his hands always ached.  Plaintiff reported that he wore compression socks that had been prescribed approximately fifteen years earlier and that he used a cane to assist in his mobility. In an August 2010 Pain and Fatigue Report, Plaintiff stated that his pain is helped by raising his feet and legs above his heart and sometimes with the use of ibuprofen and ice.

In a January 2011 Disability Report, Plaintiff indicated that the pain and numbness in both hands and both legs had increased since completing his 2010 Report.  Tr. 199. He stated that since December 15, 2010, his "peripheral neuropathy meets blue book listing #11.14."[1]  Id. To the question of whether he had any new illnesses, injuries or conditions since he last completed a disability report, Plaintiff responded "yes," listing "tnitis(sic) and failing hearing; depression due to PTSS has increased greatly, Neuropathy worsening." Id.

At the hearing before the ALJ in September, 2012, Plaintiff testified that he had stopped working because he was laid off and had not found work afterwards. The ALJ asked Plaintiff why he would not now be able to do his past work in technical support. Plaintiff testified that throughout the day he has to lie down on his back and elevate his feet because of his neuropathy and the swelling in his legs. He testified "and as far as working my previous job, I don't – there's no way I could do that.  There's too many things that you have to juggle in the job that I had, as far as at the same time. And focusing on all of those is – I couldn't do that now."  Plaintiff also described the tingling and numbness in his hands caused by his neuropathy and testified that he had arthritis in his thumbs that caused constant pain.  These conditions prevented him from doing any "strenuous" activities with his hands or activities such as typing, pinching, pulling or twisting for prolonged periods of time.

Plaintiff's statements describe worsening symptoms related to his neuropathy and diabetes mellitus and the onset of additional impairments during the relevant time period. However, he provides no evidence that supports his alleged onset date.  His statements in 2010 indicate that he left employment in 2009 for non-medical reasons and that he, himself did not consider his impairments disabling until April of 2010.  Plaintiff's testimony at the 2012 hearing

[1] The Court assumes Plaintiff is referencing Listing 11.14: Peripheral Neuropathies from the presumptively disabling impairments listed in the Agency's regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

addressed his ability to return to his previous employment at that time. The significant date for disability compensation is the date of onset of the disability rather than the date of diagnosis. <u>See</u> <u>Swanson v. Secretary of Health and Human Services</u>, 763 F.2d 1061, 1065 (9th Cir.1985); SSR 83–20 ("The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations."). Even crediting Plaintiff's statements as true, there are significant ambiguities that preclude this court from determining when Plaintiff's impairment became disabling. Resolution of those ambiguities must be left to the ALJ. <u>Andrews</u>, 53 F.3d at 1039 (ALJ responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities).

**2. Dr. Doak's Opinions**

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir.2008). An ALJ is not required to find a physician's opinion conclusive as to a claimant's physical condition or as to the ultimate question of disability. <u>Morgan v.</u> <u>Commissioner</u>, 169 F.3d 595, 600 (9th Cir.2009). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir.1992).

Melanie Doak, M.D. became Plaintiff's treating physician at the Department of Veterans Affairs Medical Center in June of 2006. In January, 2011, she completed a check-box Physical Residual Functional Capacity Assessment that pertained to Plaintiff. Tr. 758-763. In that assessment, Dr. Doak opined that Plaintiff could lift up to 10 pounds frequently and carry up to 10 pounds occasionally; in an eight hour day he could sit for a total of eight hours and for 40 to

60 minutes at a time without interruption with an ergonomic chair, could stand for a total of eight

hours and for 10 to 15 minutes at a time without interruption, and could walk a total of four

hours and for 30 minutes at a time without interruption at a "slow pace." In June, 2011, in

response to a letter from Plaintiff's counsel, Dr. Doak amended this section of the assessment to

indicate that Plaintiff had the capacity to sit for four hours total, stand for four hours total and

walk for four hours total in an eight hour day. Next to the completed check boxes she wrote

"best estimate." Tr. 766.

 In the 2011 Assessment, Dr. Doak also opined that Plaintiff was limited to frequent

overhead reaching, fingering and feeling bilaterally, and only occasional handling and

pushing/pulling bilaterally. She indicated that Plaintiff could never operate foot controls due to

numbness in his feet from neuropathy, could never climb ladders or scaffolds, balance, stoop,

kneel, crouch or crawl and could only occasionally climb stairs and ramps. Dr. Doak indicated

that she had not evaluated Plaintiff's hearing or vision  but that because he had tinnitus, he

should avoid loud environments. Dr. Doak opined that Plaintiff's physical impairments would

not preclude him from performing daily activities such as shopping, using public transportation,

preparing simple meals, and caring for personal hygiene. Tr. 758-763.

 In a letter dated April 10, 2012, Dr. Doak wrote that Plaintiff's neuropathy symptoms

"are severe, leaving him with a pain level of 7/10 fairly consistently every day." Tr. 1017. She

indicated that the pain in his legs and feet made it difficult for Plaintiff to stand or walk for "any

significant time or distance." She noted that Plaintiff had arthritis and the "beginnings of carpal

tunnel syndrome" in his hands and that this affected his ability to use his hands for gripping, fine

finger movements, and typing. Dr. Doak also wrote that Plaintiff's chronic leg edema caused

discomfort and contributed to his leg pain and his inability to walk or stand "for any significant

period of time." She noted that Plaintiff's edema worsened with increased walking or standing and was managed primarily with leg elevation. Dr. Doak also described Plaintiff's chronic tinnitus as leaving his hearing fairly intact but interfering "with his ability to focus on conversations, especially in a noisy environment . . . ." Dr. Doak concluded her letter with the following statement:

> Mr. Johnson last worked in 2009, at a tech support position that required him to sit at a desk, use a keyboard, and talk to clients on the phone. The conditions I have described above have made even this fairly sedentary type of work impossible for him to tolerate, as of November 2009. I feel that since that date, it had been highly unlikely that Mr. Johnson could return to full-time competitive employment . . . .

Tr. 1018.

The Commissioner concedes that the ALJ erred in failing to provide legally sufficient reasons for discounting Dr. Doak's opinion. However, she asserts that because there is other, uncontested and conflicting evidence in the record this case should be remanded for further proceedings to allow the ALJ to evaluate the entire record and resolve any inconsistencies. The Commissioner cites the opinion of Dr. Kim Webster who performed a musculoskeletal consultative examination of Plaintiff in November of 2010 and opined that Plaintiff was limited to two hours of standing and walking and had no restrictions as to sitting. The ALJ gave Dr. Webster's opinion "significant weight" based on its consistency with the objective evidence of record. The Commissioner also notes that the ALJ relied on a February 8, 2012 determination by the Department of Veterans Affairs that, as of December 14, 2009, Plaintiff's peripheral neuropathy was only 20% disabling. The ALJ also gave significant weight to State Agency physicians who in 2010 and 2011 determined Plaintiff was capable of sedentary work with additional postural limitations. Tr. 27, Exs. 3A,4A.

FINDINGS AND RECOMMENDATION – 13

Plaintiff does not challenge the ALJ's evaluation of the above cited evidence but argues that the ALJ has already given Dr. Doak's opinions significant weight and did not find that this other evidence cast doubt on Dr. Doak's opinion.  In his decision, the ALJ found that Dr. Doak's April 2012 opinion supported the conclusion that, as of April 10, 2012, Plaintiff was limited to occasional handling and fingering and required the ability to elevate his legs to waist level. However, the ALJ also noted that Dr. Doak's April 2012 statement described Plaintiff's condition as "much more disabling" than her statements in 2011.  Furthermore, the ALJ gave Dr. Doak's 2011 opinion only "some weight," finding that her assessment "that the claimant is unable to perform most postural manipulations is not supported by the record, and is contradicted by the claimant's activities of daily living." Tr. 27.

Although Dr. Doak's 2012 assertion that, as of November 2009, Plaintiff would have found his past work impossible to tolerate seemingly substantiates an onset date in November, 2009, her assertion is undermined by her earlier assessments and by the opinions of other medical providers. In light of these inconsistencies, it would be inappropriate to remand this case for an award of benefits based on a November 13, 2009 onset date. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014)(remand for an award of benefits inappropriate where there is conflicting evidence and not all essential factual issues have been resolved).

**3. Lay Witness Testimony**

Plaintiff contends that the ALJ erroneously rejected the lay witness statements of Plaintiff's wife, Charlene Johnson. The Commissioner does not contest this assertion.

Lay testimony as to a claimant's symptoms or as to how an impairment affects a claimant's ability to work is competent evidence which an ALJ must consider. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir.2012) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

Cir.1995); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). An ALJ who rejects the testimony of lay witnesses must provide reasons for doing so that are "germane" as to each witness. Id. Where lay witness evidence is improperly rejected, the testimony may be credited as a matter of law. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 976 (9th Cir.2000).

Mrs. Johnson submitted a letter dated December 14, 2011 and testified at Plaintiff's hearing before the ALJ. In her December 2011 letter, Mrs. Johnson writes that Plaintiff has to lie on his back on the floor several times a day to try and relieve the pain and tension in his back and legs. Plaintiff asserts that Mrs. Johnson "noted that plaintiff has suffered from these symptoms since 2009 . . . ("for over 2 years" in December 2011). This is not an accurate assessment of Mrs. Johnson's statements regarding the onset of her husband's symptoms. In a paragraph that appears later in her letter, Mrs. Johnson's actual statement is "[Plaintiff's] physical changes are worsening. He has truly suffered greatly for over 2 y[ea]rs."

At the hearing before the ALJ in June, 2012, Mrs. Johnson testified that Plaintiff "has a lot of pain," has to lie on the floor because his back and feet hurt, elevates his feet on a footstool and "has pain in his hands all the time."

As with Plaintiff's testimony, the letter and testimony submitted by Mrs. Johnson address Plaintiff's symptoms and impairments at the times the evidence was submitted in 2011 and 2012. Mrs. Johnson's single reference to Plaintiff having "suffered greatly" for the two years leading to her December 2011 letter fails to unambiguously support an onset of disability in November 2009.

## C. Remedy

The ALJ failed to provide the requisite support for rejecting the opinion of Dr. Doak, failed to provide sufficient support for his rejection of lay evidence, and failed to provide

adequate reasons for finding that Plaintiff was not wholly credible. However, even crediting this evidence as true, Plaintiff's onset date is not evident.  Dr. Doak's assertion that Plaintiff was unable to return to his past work as of November 2009 is contradicted by other substantial evidence in the record.  Furthermore, the ALJ's selection of April 10, 2011 as the onset date, apparently because that is the date of Dr. Doak's letter, is unreasonable and unsupported by substantial evidence. Because Plaintiff's disability onset date remains unresolved a remand for an award of benefits would be inappropriate. See Regennitter, 166 F.3d at 1300; see also, Luna, 623 F.3d at 1035. Accordingly, this case should be remanded to the Agency for the limited purpose of determining Plaintiff's onset date and awarding benefits consistent with that determination. Id.; see also House v. Colvin, 583 F. App'x 628, 629–30 (9th Cir.2014) (unpublished)(remanding for further proceedings as to the question of disability onset date). In reviewing Plaintiff's case upon remand, the ALJ should be directed to re-examine the evidence which was improperly discounted and, if necessary, call upon the assistance of a medical advisor pursuant to SSR 83-20.

## Conclusion

For the reasons set out above, the Commissioner's motion to remand for further proceedings (#19) should be GRANTED in part, and the Commissioner's decision should be REVERSED and REMANDED to the Agency for further proceedings to determine Plaintiff's onset date.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due February 16, 2016.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION – 16

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of January, 2016.


 /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION – 17